UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| RONALD RIVERS, ET AL. | * | CIVIL ACTION |
|---|---|---|
| VERSUS | * | NO. 06-8519 |
| CHALMETTE MEDICAL CENTER, INC., ET AL. | * | SECTION "L" (4) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER & REASONS

On November 17, 2006, the Plaintiffs filed a Motion to Remand (Rec. Doc. 7) the above-captioned case. In light of recent Fifth Circuit precedent, the Plaintiffs sought to conduct limited discovery on the jurisdictional issues, primarily regarding the number of putative class members who may have been considered citizens of Louisiana at the time of filing. Having now been fully advised on the jurisdictional issues, and having studied the parties' briefing, the relevant law, and the factual and procedural history of this case, the Court now holds, for the following reasons, that it has subject matter jurisdiction over this dispute pursuant to the Class Action Fairness Act of 2005 ("CAFA"). Accordingly, the motion to remand is DENIED.

**I.     BACKGROUND**

This lawsuit arises from the injuries and/or deaths of patients at Chalmette Medical Center, Inc., in St. Bernard Parish following Hurricane Katrina in late August and early September of 2005. On August 28, 2006, various relatives of deceased patients ("Plaintiffs") filed this putative class action against Chalmette Medical Center, Inc. ("CMC"), and Universal Health Services, Inc. ("UHS") (collectively, "Defendants"), in the Thirty-Fourth Judicial District Court for the Parish of St. Bernard, Louisiana.[1] In their amended petition, the Plaintiffs bring

---

[1] On December 23, 2008, the Plaintiffs filed a motion to amend their complaint and add Universal Health Services of Delaware, Inc. ("UHS of Delaware"), as a named defendant.

1

claims against CMC, UHS, and UHS of Delaware, asserting various allegations of negligence and intentional misconduct resulting in "unreasonably dangerous conditions/defects in and/or on the premises of Chalmette Medical Center in the wake of Hurricane Katrina." Class Action Petition for Damages at ¶ II, Exhibit 1 to Rec. Doc. 1 (Aug. 28, 2006). The Plaintiffs have filed a class action and seek certification of a class composed as follows:

> All persons who sustained injury and/or damage, including but not limited to, personal injury or wrongful death, as a result of unreasonably dangerous conditions and/or defects in and/or on the premises of CHALMETTE MEDICAL CENTER on or about August 29, 2005, and/or as a result of the failure of CHALMETTE MEDICAL CENTER, INC., and UHS to attain, maintain, and/or provide an adequate means of transportation to timely and/or safely move persons off its premises in the wake of Hurricane Katrina.

*Id.*

On October 18, 2006, the Defendants timely filed a Notice of Removal, asserting the following bases for federal jurisdiction: (1) minimal diversity under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d); (2) complete diversity under 28 U.S.C. § 1332; (3) the Multi-Party Multi-Forum Trial Jurisdiction Act ("MMTJA"), 28 U.S.C. 1369; and (4) the Federal Officer Removal Statute, 28 U.S.C. § 1442.

On November 17, 2006, the Plaintiffs filed a motion to remand. Because the Court finds that federal jurisdiction is appropriate pursuant to CAFA, it is unnecessary to determine whether the Court also possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332, the MMTJA, or the Federal Officer Removal Statute.

## II. LAW & ANALYSIS

The Class Action Fairness Act of 2005, ("CAFA"), Pub.L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.), expands federal diversity jurisdiction over interstate

class actions.[2] Intended to curtail forum shopping and prevent inconsistent practices in class action litigation, CAFA relaxes the standard for removal of class actions filed in state courts by eliminating both the requirement of unanimous consent among defendants and the one-year deadline for filing a notice of removal. Pub. L. No. 109-2. CAFA confers original federal jurisdiction over class actions in which: (1) the putative class includes at least one hundred class members; (2) the amount in controversy exceeds $5,000,000, exclusive of interests and costs; and (3) at least one member of the plaintiff class is a citizen of a different state than at least one defendant ("minimal diversity"). 28 U.S.C. §§ 1332(d)(2), 1332(d)(5).

However, CAFA provides three exceptions to this expanded federal jurisdiction. Pursuant to the "local controversy" exception and the "home-state controversy" exception, both of which are mandatory exceptions, a district court does not possess subject matter jurisdiction over cases which are distinctly local in nature. 28 U.S.C. § 1332(d)(4). *See also Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.* (*Preston II*), 485 F.3d 804, 811 (5th Cir. 2007). Specifically, the local controversy exception mandates remand when: (1) more than two-thirds of the proposed plaintiff class are citizens of the State where the lawsuit was filed; (2) at least one significant defendant is a citizen of the State where the lawsuit was filed; (3) the relevant injuries and conduct involved in the lawsuit occurred in the State where the lawsuit was filed; and (4) no other class action asserting similar factual allegations against any of the defendants involved has been filed within the three years prior to the filing of the lawsuit. 28 U.S.C. § 1332(d)(4)(A). The home-state controversy exception requires remand when: (1) more than two-thirds of the proposed plaintiff class are citizens of the State where the lawsuit was filed; and (2) all primary defendants are citizens of the State where the suit was filed. *Id.* § 1332(d)(4)(B). The third

---

[2] For a detailed history of the CAFA legislation, as well as a thorough analysis of its effect on class action litigation, see Edward F. Sherman, *Class Actions after the Class Action Fairness Act of 2005*, 80 TUL. L. REV. 1593 (2006).

exception to CAFA, a discretionary exception, permits a district court to refuse jurisdiction over a case when the interests of justice require it and between one-third and two-thirds of the proposed plaintiff class, as well as all primary defendants, are citizens of the State where the suit was filed. 28 U.S.C. § 1332(d)(3).

CAFA was created in order to create broad federal jurisdiction over class actions of national interest. *Preston II*, 485 F.3d at 810. Furthermore, the exceptions are intended "to exclude only a narrow category of truly localized controversies." *Id. a*t 812. Although CAFA does not change the traditional rule that the party seeking to remove the case bears the burden of establishing the existence of federal jurisdiction, once that party has proven that the prima facie elements of CAFA are present, the burden shifts to the party seeking remand to demonstrate that the case fits within an exception to CAFA. *Id.* at 813. Accordingly, in this case, the Plaintiffs bear the burden of proving that remand is appropriate pursuant to one of the aforementioned exceptions. Here, Plaintiffs argue that they have satisfied the requirements of all three exceptions. However, for the following reasons, they have failed to demonstrate that any of the mandatory or discretionary exceptions should be applied.

### A. THE "LOCAL CONTROVERSY" EXCEPTION

The local controversy exception is a mandatory exception to federal jurisdiction under CAFA. As the statutory exception reads:

> A district court shall decline to exercise jurisdiction . . . (i) over a class action in which (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed; (II) at least 1 defendant is a defendant (aa) from whom significant relief is sought by members of the Plaintiff class; (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (cc) who is a citizen of the State in which the action was originally filed; and (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and (ii) during the 3-year period preceding the filing of that class action, no other class

action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A). In this case, the Plaintiffs are unable to prove that more than two-thirds of the members of the proposed plaintiff class are citizens of the State of Louisiana. Even if the Plaintiffs were able to meet this burden, this case would not fit into the local controversy exception because within the three years prior to the filing of this lawsuit, a class action was filed against one of the Defendants in this case, United Health Services, containing similar factual allegations regarding the circumstances at a different New Orleans area hospital in the wake of Hurricane Katrina.[3]

Following Hurricane Katrina, courts inquiring into the citizenship of displaced individuals have been faced with unique challenges. However, the test for determining an individual's citizenship has not changed. When determining the citizenship of the plaintiffs, the Court looks to citizenship "as of the date of the filing of the complaint." 28 U.S.C. § 1332(d)(7). For purposes of diversity, "citizenship has the same meaning as domicile." *Stine v. Moore*, 213 F.3d 446, 448 (5th Cir. 1954). Residence establishes a prima facie indication of domicile, but it must be accompanied by intent to remain in the state. *Id.* Thus, prolonged absence or "[m]ere presence in a new location does not effect a change of domicile; it must be accompanied with requisite intent." *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996). In a CAFA case, the party moving for remand must establish the citizenship requirement of the relevant exception by a preponderance of the evidence. *Preston II*, 485 F.3d at 814.

Plaintiffs claim that they have met the citizenship threshold in this case through the use of questionnaires administered to potential members of the proposed class. Out of the 344 questionnaires that were sent out, Plaintiffs received 120 responses. Of these responses, 26

---

[3] Because the Court concludes that these two requirements of the local controversy exception are not satisfied, it is unnecessary to consider whether or not Plaintiff seeks significant relief from CMC, the Louisiana Defendant.

people indicated that they were not at the hospital during the storm. Subtracting these responses from the total number of questionnaires distributed, Plaintiffs identify the potential class as consisting of 318 individuals. Of the 94 remaining responses, 82 potential plaintiffs indicated that they have either moved back to Louisiana since Hurricane Katrina or they intend to return. Accordingly, Plaintiffs calculations indicate that approximately 87% of the respondents are citizens of Louisiana. Plaintiffs argue that it is appropriate to extrapolate this figure to the entire proposed class of potential plaintiffs in order to conclude that more than two-thirds of the members of the proposed plaintiff class are citizens of the State of Louisiana.

In the immediate aftermath of Hurricane Katrina, courts considering the citizenship of displaced citizens were willing to accept pre-Katrina addresses, coupled with some evidence of intent to remain, and to employ a presumption of continuing domicile. *See Preston II*, 485 F.3d at 814-818. Out of necessity, courts were then willing to extrapolate in order to reach the conclusion that the citizenship requirements of the CAFA exceptions had been met. *See id.* at 818-19. *See also Martin v. Lafon Nursing Facility of the Holy Family, Inc.*, 548 F. Supp. 2d 268, 276-77 (E.D. La. 2008) ("The fact that not all potential class members responded does not mean that the Court cannot make this preliminary jurisdictional determination; the Court may reasonably assume that these responses are representative of the class as a whole."). As the United States Court of Appeals for the Fifth Circuit has explained:

> [W]e also consider the common genesis of the historically unprecedented exodus from New Orleans in our assessment of the citizenship issue. In light of the vast post-Katrina diaspora and the undisputably slow revitalization in parts of New Orleans, it is unreasonable to demand precise empirical evidence of citizenship in a class action lawsuit filed less than sixty days after the hurricane and related flooding. Many Hurricane Katrina victims may intend to return home yet are still dispersed throughout Louisiana and other states for reasons beyond their control, such as not having shelter and employment in the New Orleans area.

*Preston II*, 485 F.3d at 819. It is evident that the circumstances following Hurricane Katrina were unique. In the face of such widespread temporary displacement, courts were forced to assume that repopulation would occur and that displaced members of potential class members intended to return home.

As more time elapses, extrapolating data based on these assumptions becomes less reasonable. In *Preston II*, for example, the Fifth Circuit focused on the fact that the "class action lawsuit [was] filed less than sixty days after the hurricane." *Id.* The instant lawsuit, on the other hand, was filed in the 34th Judicial District Court for the Parish of St. Bernard on August 28, 2006, nearly a full year after Hurricane Katrina. The questionnaires that Plaintiffs mailed out were not approved by the Court until December 19, 2007, more than 25 months after the storm. By this point in time, it had become unreasonable to assume that displaced individuals who had not yet returned to Louisiana possessed the requisite intent to return, without some further proof. This is especially true of patrons of a hospital in St. Bernard Parish, a geographical location that was particularly devastated by the storm, where United States Census Bureau estimates for 2007 indicate that only 29.5% of the pre-Katrina population had returned. While many of these displaced citizens may have relocated to other Louisiana parishes, the Plaintiffs bear the burden of proving the two-thirds citizenship requirement by a preponderance of the evidence. With a questionnaire response rate of only 30%, extrapolation to the entire proposed class is inappropriate and the Plaintiff's have failed to meet their burden.

In determining whether extrapolation is appropriate in a given case, courts have also looked to how narrowly or broadly the plaintiffs have defined their proposed class. In *Preston II*, for example, the proposed class was limited to *patients* of the hospital at the

time of Hurricane Katrina who suffered death or injury as a result of the hospital's allegedly negligent response to the storm. *Id.* at 808. The court allowed extrapolation in that case because "[t]he defined class clearly involve[d] a finite group of persons" but stated that they "would probably invoke a different analysis if, for example, the class definition included persons trapped in the Ninth Ward in the hours and days following Hurricane Katrina and the levee breach." *Id.* at 821.

In this case, the Plaintiffs have chosen to define the proposed class much more broadly than the proposed class in *Preston II*. It includes "*all persons* who sustained injury and/or damages . . . as a result of unreasonably dangerous conditions and/or defects in and/or on the premises of Chalmette Medical Center on or about August 29, 2005." Class Action Petition for Damages at ¶ III, Exhibit 1 to Rec. Doc. 1 (Aug. 28, 2006) (emphasis added). As the Defendants point out, this class could reasonably include patients, family members of patients, employees, family members of employees who sought refuge at the hospital, other refugees who sought safety at the hospital, and other people who suffered harm as a result of the injuries to the people at the hospital. Second Supplemental Memorandum in Opposition to Motion to Remand at 46, Rec. Doc. 116 (Jan. 14, 2009). Accordingly, the breadth of this potential class leads this Court to believe that a different citizenship analysis is appropriate in this case, as suggested by the Fifth Circuit in *Preston II*. 485 F.3d at 821.

The questionnaires that were mailed out in this case were sent to the last known addresses of potential class members. At this time, the court declines to speculate as to whether the sample of 82 responses was skewed in either direction based on the

unavailability of mailing addresses for certain groups of proposed class members.[4] Instead, it is sufficient to note that extrapolating the limited questionnaire data available in this case would require the Court to assume that most of the proposed class members were similarly situated for purposes of the citizenship analysis. With such a broadly defined class, this assumption is not warranted, and accordingly extrapolation is not appropriate.

Even if the Plaintiffs were able to satisfy the two-thirds citizenship requirement, this case would not qualify for the local controversy exception because the requirement imposed by 28 U.S.C. § 1332(d)(4)(A)(ii) cannot be met in this case. In order to qualify for remand under the local controversy exception, Plaintiffs must prove that "during the 3-year period preceding the filing of that class action, no other class action [has been filed] asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). Sometime on or before August 3, 2006, a lawsuit was filed in the Civil District Court for the Parish of Orleans, State of Louisiana, bearing the caption *Samuel et al. v. Universal Health Services*, No. 06-7234 (E.D. La.) (removed on Oct. 3, 2006). Filed approximately one month prior to the instant case, *Samuel* involved different hospitals and different putative class members than this case. However, under the local controversy exception, because UHS is a defendant in both cases, the question is whether the two class actions assert "the same or similar factual allegations." 28 U.S.C. § 1332(d)(4)(A)(ii).

---

[4] Defendants argue that "the vast majority [of the responses] are from former Hospital employees for whom Defendants had the most reliable and recent contact information." Second Supplemental Memorandum in Opposition to Motion to Remand at 49, Rec. Doc. 116 (Jan. 14, 2009).

Although the Fifth Circuit has not specifically addressed this element of the local controversy exception, the United States District Court for the Eastern District of Texas has stated that:

> Drawing the line between factual allegations that are similar and those that are dissimilar is inherently imprecise. Such undertaking requires sound judicial discretion. Clearly, Congress did not intend for courts to seize upon minor or insignificant variances in order to decline to exercise expanded class action jurisdiction. Thus, courts should not employ this exception when the essential contours of claims and factual averments in multiple class actions are substantially the same or overlapping notwithstanding some identifiable differences.

*Rasberry v. Capitol County Mut. Fire Ins. Co.*, 609 F. Supp. 2d 594, 605 (E.D. Tex. 2009). Although, as Plaintiffs emphasize, the two class actions are based upon events at two different hospitals, this difference is "minor or insignificant" when compared with the nearly identical factual allegations underlying each complaint. There is significant overlap amongst the plaintiffs' attorneys involved in the two cases and a review of each complaint reveals that the factual allegations in this case were essentially cut and pasted from the complaint in *Samuels*, with the names and locations changed. Accordingly, the Court concludes that the presence of a class action containing similar factual allegations, filed shortly before the filing of this case, is fatal to the Plaintiffs' attempt to invoke the local controversy exception.

### B. THE "HOME STATE" EXCEPTION

The second mandatory exception to CAFA, the home state exception provides that "[a] district court shall decline to exercise jurisdiction . . . over a class action in which . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). As discussed above, Plaintiffs have failed to meet their burden of proving the

two-thirds citizenship requirement. Even if they were able to meet this burden, the application of the home state exception would be inappropriate because two defendants, UHS and UHS of Delaware, are both foreign and primary defendants.

Plaintiffs first argue that all three Defendants, UHS, UHS of Delaware and CMC should be treated as a single entity and therefore a single defendant for the purposes of the citizenship inquiry. Furthermore, they argue that this conglomerated single defendant should be treated as a citizen of Louisiana. However, this argument is unpersuasive. Even if it is assumed that it is appropriate to treat the three Defendants as a single entity at this jurisdictional stage of the case, an issue which the Court declines to address at this time, that entity would not be considered a citizen of Louisiana.

For purposes of CAFA jurisdictional determinations, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Id.* § 1332(c)(1). In this case, Plaintiffs refer to the alleged single defendant as "UHS". There is no doubt that UHS was incorporated in Delaware, and would therefore be a citizen of Delaware. Of course, as Plaintiffs point out, UHS would also be a citizen of Louisiana if their principal place of business were in Louisiana. However, UHS, is a publicly traded company which, through subsidiary relationships, owns the stock of hospitals not only in Louisiana but also in Texas, Pennsylvania, Nevada, Florida and California. In fact, in addition to their home office in Pennsylvania, UHS operated eight Pennsylvania hospitals. Furthermore, only 6% of the company's total revenue generated during the first six-months of 2005 was generated in Louisiana, as compared with 23% from Nevada.[5] Thus, the evidence

---

[5] While the Court is mindful that the relevant inquiry for jurisdictional purposes is citizenship at the time of filing, it would be inappropriate to ask whether UHS had its principal place of business in Louisiana at the time of filing in this case. The devastation wrought by Hurricane Katrina made it impossible for most businesses to maintain a principal place of business in the affected areas, and the numbers would be skewed. Even giving Plaintiffs the

indicates that UHS did not have their principal place of business in Louisiana. Although it is unnecessary to determine whether UHS maintained its principal place of business in Pennsylvania, Nevada, or elsewhere, it is clear to the Court that the alleged single defendant would not qualify as a citizen of Louisiana. Accordingly, even accepting that the three Defendants did act as a single entity, Plaintiffs are unable to meet their burden of proving that the home state exception applies.

If the three Defendants in this case are not a single entity, than the relevant question becomes whether the foreign defendants, UHS and UHS of Delaware are primary defendants. Although CAFA provides no definition of the word "primary," a defendant is primary if they are of greater importance than a significant defendant. *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 369 (E.D. La. 2007). In this case, it is clear that UHS is a primary defendant. They are responsible for overseeing the administration of the CMC. Furthermore, many of the Plaintiffs' allegations, such as the failure to provide safe transportation, involve the administrative aspect of the operation. Finally, it is clear that Plaintiffs seek substantial financial recovery from UHS. The presence of this foreign and primary defendant is fatal to Plaintiffs' attempt to apply the home state exception.

### C. THE DISCRETIONARY EXCEPTION

Finally, the third exception to CAFA allows a district court to remand a class action in the interests of justice when "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(1)(C). The statute goes on to provide a list of factors to be considered when determining whether or not remand is in the

---

benefit of the doubt by considering the evidence immediately prior to Katrina, Plaintiffs cannot satisfy their burden of proving that UHS was a Louisiana citizen.

interests of justice. *Id.* As previously discussed, the questionnaire evidence submitted by the Plaintiff in this case was insufficient to prove that two-thirds of the proposed plaintiff class are Louisiana citizens, as required by the mandatory exceptions. Under the discretionary exception, the burden on the Plaintiff is much lower and the question of whether more than one-third of the Plaintiffs' proposed class are citizens of Louisiana is much closer. However, because the Court has already concluded that UHS is a primary defendant, and not a citizen of Louisiana, application of the discretionary exception would be inappropriate. Accordingly, at this time, the Court need not consider whether Plaintiffs can meet the citizenship requirement of the discretionary exception or whether the interests of justice favor remand.

III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiff's Motion to Remand IS DENIED.

New Orleans, Louisiana, this 8th day of October, 2009.

_____
UNITED STATES DISTRICT JUDGE